UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RICARDO ARREDONDO, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-170 |
| § | |
| JOEY ESTRADA, *et al*, § | |
| § | |
| Defendants. § | |

**ORDER GRANTING IN PART AND DENYING IN PART**
**WEATHERFORD'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Ricardo Arredondo, Jr., Richard Rabino, and Mario Torrez, all former employees of Weatherford International, LLC (Weatherford), filed suit for damages arising out of abusive treatment by their supervisor, Joey Estrada (Estrada), that allegedly affected their work environment, employment, and personal health. While there appears to be no dispute that the abusive conduct took place, the question for the Court is whether Plaintiffs' specific causes of action are viable under all of the facts.

Reading Plaintiffs' Amended Complaint liberally, their federal claims are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (discrimination based upon sex, sexual harassment, hostile work environment, and constructive discharge) and § 2000e-3(a) (retaliation). Invoking the Court's supplemental jurisdiction over state law claims, Plaintiffs also complain of assault (and battery), intentional infliction of emotional distress, and against Weatherford only: negligent hiring, supervision, training, and retention of Estrada. D.E. 27.

Weatherford denies the claims and further defends on the basis of, among other things, failure to exhaust administrative remedies, limitations, and Plaintiffs' alleged unreasonable failure to take steps pursuant to Weatherford policies to prevent and/or correct any discrimination or harassment problem. D.E. 48. While not pled, Weatherford also relies in its summary judgment motion on the defense that Plaintiffs' state law claims against Weatherford are preempted by the Texas Workers' Compensation Act, Tex. Lab. Code Ann. § 408.001(a). D.E. 57.

Before the Court is Weatherford's Motion for Summary Judgment (D.E. 57, 58), along with Plaintiffs' Response (D.E. 75) and Weatherford's Reply (D.E. 78).[1] For the reasons set out below, the motion is GRANTED IN PART and Plaintiffs' Title VII retaliation, intentional infliction of emotional distress, and negligent hiring, supervision, training, and retention claims are dismissed. The motion is DENIED IN PART and Plaintiffs' Title VII sex discrimination and assault claims are ordered to proceed to trial.

## DISCUSSION

### A. The Abusive Conduct

Undisputed evidence shows that, during their employment with Weatherford, Plaintiffs worked on a crew supervised by Estrada. Estrada, who was missing half of one of his fingers, was known as "The Nub" or "Mr. Nub." He was well known for threatening to "nub" the workers, meaning that he would punch them in the back, head, or the arm, using his fist with the nub extended. D.E. 75-3, p. 28. This offensive

---

[1] In a separate motion, Weatherford has asked that the Court issue sanctions against Plaintiffs, including precluding them from using any testimony supplied by Estrada. The Court rules on that motion in a separate order. However, the Court notes that the holdings reached herein are not dependent in any way upon Estrada's testimony. Rather, the same result obtains with or without consideration of that testimony.

behavior also included putting his nub in other persons' drinks and licking it and putting it in their ears (a "wet willy"). If Estrada was not engaging in a "nubbing," he was often threatening Plaintiffs with "nubbings" and using demeaning vulgarities. In addition, Estrada would grab the back pockets of employees' coveralls and pull them toward his front side in contact with his clothed genital area. D.E. 75-3, pp. 29-30.

This conduct crossed all boundaries on at least four occasions,[2] each of which involved one of the Plaintiffs and a similar modus operandi. Certain crew members would capture the Plaintiff and restrain him by either holding his arms and legs or duct taping him and then lay him out or bend him over so that Estrada could punch him in the buttocks, with his nub extending between the buttocks into the anal region. Estrada would do so, twisting his hand, and repeating several times.

While Plaintiffs were clothed in fire-retardant coveralls during these assaults, some of those coveralls were made of lightweight knit, allowing painful penetration of Estrada's nub and causing significant chaffing. On the second Torrez incident, Estrada opened up his own coveralls, either rubbed his nub or pretended to rub it against his own genitals, and then had others pry open Torrez's mouth so that Estrada could stick his hand in Torrez's mouth, in his nose, ears, and eyes and around Torrez's face while Torrez was duct-taped, immobilized, and incapable of defending against the attack. D.E. 75-2, p. 33; D.E. 75-3, p. 43. Plaintiff Rabino captured a video of this incident on his phone.

---

[2] Plaintiff Arredondo was assaulted on May 8, 2011. Plaintiff Rabino was assaulted on his birthday, January 19, 2012. And Plaintiff Torrez was assaulted twice: once in February of 2012 and again before a scheduled leave in April of 2012.

Estrada made these "nubbings" particularly demeaning, calling out "Come on, bitch," "Get loose, bitch," "Who's your daddy?" or "Do you want to be my bitch?" D.E. 75-1, p. 27, D.E. 75-2, p. 29, D.E. 75-3, p. 31. In later referring to the May 8, 2011 incident, the crew talked about how Arredondo had been "finger fucked." D.E. 75-3, p. 31. Plaintiff Torrez testified that it went straight to his ego, his pride, "I mean, it don't make you feel like anymore of a man." D.E. 75-2, p. 30.

The incident with Arredondo occurred after the crew had completed its shift and had gone to their hotel where they were barbecuing and drinking beer together. Both of the incidents involving Plaintiff Torrez took place on a Weatherford job site. D.E. 75-2, p. 29, 34. The incident with Plaintiff Rabino took place on a job site during a shift change. D.E. 75-3, p. 36. Weatherford employees in supervisory positions, who had witnessed or knew of these "nubbings" and Estrada's continual threats to repeat them, laughed about it, dismissing it as "that's just Joey." D.E. 75-2, pp. 29, 31, 33; 75-3, pp. 29, 34, 36, 73.

Estrada routinely threatened Plaintiffs with this behavior, saying things like, "You want the nub, bitch?" D.E. 75-2, p. 27. Yet nothing was done to stop him. Plaintiffs testified that the company culture was such that they were expected to endure any treatment doled out by supervisors—that they were to "get along to go along." While Weatherford had policies that appeared to disapprove of such behavior, a Human Resources chain of command for complaints and an anonymous tip line, Plaintiffs testified that they feared making a formal complaint because it would inevitably lead to

retaliation that threatened their jobs and personal safety. Thus Plaintiffs did not assert any complaint other than informal conversation with other supervisor witnesses.

When another person, apparently motivated by the second Torrez incident, called in an (initially) anonymous complaint, Weatherford's HR representative investigated, learned that the allegations were true, and terminated Estrada and either terminated or disciplined other employees who had participated in capturing and restraining Plaintiffs. By that time, Plaintiff Arredondo had already left Weatherford's employ following an unrelated incident with a different supervisor. Torrez, who had already planned a two-week vacation to travel to Michigan to visit his family, decided to remain in Michigan.

Only Plaintiff Rabino remained as an active employee when the investigation was initiated and became common knowledge. He testified that he was immediately subjected to threats as the presumed tattler. Rabino was afraid to return to his work crew and Weatherford put him on paid suspension, telling others that it was unpaid suspension in an effort to protect him from retaliation. Plaintiff Rabino found other employment and never returned to the Weatherford job site.

## B. Jurisdiction and Exhaustion of Administrative Remedies

While Plaintiffs have sued under Title VII of the Civil Rights Act of 1964 (thus securing federal question jurisdiction under 28 U.S.C. § 1331), such claims may be adjudicated only if Plaintiffs have exhausted their administrative remedies in a timely manner. 42 U.S.C. § 2000e-5(e)(1); *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006). This is a jurisdictional requirement. *Nat'l Ass'n of Gov't Employees. v. City Public Service Bd.*, 40 F.3d 698, 711 (5th Cir. 1994).

To assert a Title VII claim, a plaintiff must first file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within, at most, 300 days of the asserted violation. 42 U.S.C. § 2000e-5(e)(1); *EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393, 398 (5th Cir. 2007). Plaintiffs Rabino and Torrez filed such claims for discrimination based upon sex, but did not assert retaliation claims and more than 300 days have passed since their employment with Weatherford was terminated in April 2012. D.E. 57-15 (Rabino), 57-16 (Torrez). While Arredondo had originally included a claim for retaliation with his sex discrimination claim, that claim was withdrawn and the deadline has now passed. D.E. 57-13, 57-14. Therefore, none of the Plaintiffs may maintain a claim based upon retaliation in this Court. The Court GRANTS IN PART the motion for summary judgment and DISMISSES all claims for retaliation.

With respect to their claims for discrimination based upon sex, both Torrez and Rabino filed their EEOC complaints within 300 days of the physically-restrained anal "nubbings" practiced upon them. Their claims cannot be dismissed on the basis of limitations.

Plaintiff Arredondo's such "nubbing" occurred outside the 300 day limitations period. For Plaintiff Arredondo to survive the limitations bar, he has invoked the "continuing violation" theory. According to that theory, where there is a series of related acts, one or more of which falls within the limitations period, the plaintiff's claim is not barred. *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997). The idea is that equity affords a plaintiff time "until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is

on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Id*. (citing *Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1560–61 (5th Cir. 1985)).

This Court cannot say, as a matter of law, that the May 8, 2011 "nubbing" that Plaintiff Arredondo endured necessarily made it apparent that the act was one of sex discrimination rather than simply an assault. Clues to the sex discrimination claim arise out of knowing who the victims were and piecing together why those individuals were targeted. For a plaintiff, it is a matter of identifying a persisting and continuing system of discriminatory practices that may not manifest themselves as individually discriminatory except in accumulation over a period of time. *Id*. (quoting *Glass, supra*).

Neither can this Court say, as a matter of law, that the discriminatory nature of the practice was apparent to Plaintiff Arredondo only at some time within the 300-day limitations period. Plaintiffs have alleged a hostile work environment with instances of constant related harassment throughout their employment with Weatherford. According to undisputed evidence, "nubbings" to various body parts and threats of "nubbings" and related conduct were a constant at the Weatherford work site. It is a question for the jury to determine when, in fairness and in logic, Arredondo should have seen the harassment he endured as a pattern of discrimination. The Court DENIES IN PART the motion for summary judgment regarding any limitations bar against the consideration of sex discrimination claims under Title VII.

### C. Title VII Discrimination Based Upon Sex

Plaintiffs' complaint asserts discrimination based on sex in the context of a hostile work environment involving sexual harassment. To prevail on such a Title VII claim, Plaintiffs must show: (1) they belong to a protected class; (2) they were subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) their employer knew or should have known of the harassment and failed to take prompt remedial action or the harassment was perpetrated by a supervising employee. *Lauderdale v. Tex. Dept. of Criminal Justice*, 512 F.3d 157, 162-63 (5th Cir. 2007); *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005). Weatherford argues that Plaintiffs' sex discrimination claims must be dismissed because Plaintiffs cannot establish the third or fourth element.

#### 1. Discriminatory Conduct

To prevail on a Title VII claim for sexual harassment, Plaintiffs must show that they were harassed because they were male ("because-of-sex"). *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *EEOC v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc). Estrada is male, all of the victims are male, and the entire workforce is populated solely by men. At issue, therefore, is same-sex harassment in a non-diverse workplace.

There are three generally accepted evidentiary paths for showing that same-sex harassment is discriminatory: (1) the harasser is homosexual and allegedly motivated by sexual interest; (2) the victim's harassment shows that the harasser is generally hostile

toward employees of the same sex; or (3) the harasser treats members of the different sexes in a disparate manner in a mixed-sex workplace. *Oncale*, 523 U.S. at 80-81. Applying those analyses, there is no evidence that Estrada is homosexual or motivated by sexual interest. There is no evidence that Estrada is hostile toward men, generally, as opposed to women. And this workplace is not a mixed-sex workplace such that Plaintiffs can show that Estrada treated women differently.

Plaintiffs argue, correctly, that the *Oncale* trio of same-sex harassment scenarios is not exclusive and they are entitled to advance alternative theories by which Estrada's admittedly sexual, vulgar, abusive, and even assaultive acts are discriminatory. *See Boh Bros.*, 731 F.3d at 455-56. Without actually articulating any such alternative theory, they rely on the extreme sexual nature of the conduct and suggest that it is analogous to the gender stereotyping fact scenario approved by the en banc court in *Boh Brothers*. Additionally, they rely on the deposition testimony of Rudy Espinoza, a Weatherford supervisor, in which he agreed that the most egregious of Estrada's conduct was sexual harassment as opposed to hazing. D.E. 75-10, pp. 13-14.

Viewing the evidence in favor of the non-movant as required by Federal Rule of Civil Procedure 56, Plaintiffs' deposition testimony paints a picture of Estrada and other employees targeting them as weaker crew members and using male domination techniques to have Plaintiffs perceived as less manly and thus less worthy as crew members. They did this by referring to them as "bitches," restraining them in passive sexual positions, and Estrada placing his nub in or near their orifices in a symbolically phallic manner that Plaintiffs found humiliating and threatening to their masculinity.

Estrada may not have expressly labeled Plaintiffs as effeminate as occurred in *Boh Brothers*, but a jury could reasonably find that Estrada's behavior implied that Plaintiffs were "lesser men" and that Estrada viewed them this way.

Vulgar words, physical acts with sexual connotations, horseplay, and "locker room" behavior with explicit sexual components do not necessarily state a Title VII gender discrimination claim. *Oncale,* 523 U.S. at 80*; Boh Bros.,* 731 F.3d at 454. More commonly, sexual harassment involves humiliation related to sexual desire. *LaDay v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). However, humiliation based on gender stereotyping meant to separate those who are deemed less manly from the rest of a crew is actionable. *Boh Bros.*, *supra*.

### 2. Severe and Pervasive Conduct Affecting Employment

To affect a term, condition or privilege of employment, the harassing conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Aryian v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008). The complained-of environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998).

These are fact-intensive issues. *See*, *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263-64 (5th Cir. 1999). Weatherford contends that the "nubbings" were four isolated instances. While only four physically-restrained anal "nubbings" occurred with Plaintiffs as victims, there was testimony regarding a fifth and they occurred within a

single year's time.  Plaintiff Torrez was subjected to physically-restrained anal "nubbings" twice, only two months apart in the course of less than four months on the job with Weatherford.

Furthermore, in between these physically-restrained "nubbings," Estrada voiced credible threats of additional anal "nubbings" and harassed Plaintiffs with "nubbings" to their backs, heads, ears, and other body parts on a fairly constant basis.  Plaintiffs have certainly submitted sufficient evidence to raise a disputed issue of material fact on the severity and pervasiveness of Estrada's conduct and its effect on their employment.

### 3. Weatherford's *Ellerth/Faragher* Affirmative Defense

Weatherford seeks to defeat liability by claiming that (1) Plaintiffs did not suffer any tangible employment actions and (2) it has established an *Ellerth/Faragher* defense. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).  Assuming without deciding that Weatherford is correct on the premise that Plaintiffs did not suffer tangible employment actions, the record is sufficient to raise a disputed issue of material fact on its *Ellerth/Faragher* defense.

The first prong of the defense is whether Weatherford took reasonable care to prevent and correct harassment.  The second prong is whether Plaintiffs unreasonably failed to avail themselves of Weatherford's anti-harassment procedures.  *Ellerth, supra*; *Faragher, supra*.  The question of what was "reasonable" under the circumstances does not require looking at the actions of the respective parties in a vacuum.  To be reasonable, employer policies must reach the needs of the employees.  *Faragher*, 524 U.S. at 778 (stating that the policy must be "suitable to the employment circumstances").  Certainly,

to be unreasonable, employees must forego available remedies that do not risk bodily harm or loss of employment. Here, there is evidence of a compromised corporate culture.

It is true that Weatherford had anti-discrimination and anti-harassment policies in effect and upon receiving a report of the second Torrez incident (the first report made of any such incident), Weatherford investigated it promptly and terminated or disciplined the worst offenders. *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 971 (5th Cir. 1999) (approving the employer's *Ellerth/Faragher* defense when it had an adequate policy in place and, upon notice of the charge, vigorously investigated it). However, there is evidence that supervisors ruled their crews with iron fists. According to the Plaintiffs, the spoken or unspoken messages that permeated the workplace, included that they had to "get along to go along" and "what happens here stays here." They quickly learned that supervisors were not to be questioned and that doing so would not end well for them. And those supervisors who were aware of Estrada's conduct were not interested in stopping it. Based upon the working environment, Plaintiffs feared retaliation if they were to take advantage of any complaint procedure that went over the head of any immediate supervisor.

It is for a jury to decide if Weatherford knew or should have known of the intimidation of the crews and whether the complaint procedures were reasonable under those circumstances. It is for a jury to decide whether Plaintiffs were unreasonable in not invoking the complaint procedures in an attempt to stop Estrada's behavior, given the corporate culture.

### 4. Constructive Discharge

Plaintiffs have included claims for constructive discharge, which requires showing that work conditions were so intolerable that a reasonable person would feel compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 139 (2004). The severity of harassment must exceed the minimum required for a sexual harassment claim—have some aggravating circumstances—to justify constructive discharge. *Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir. 1992).

While Weatherford contends that Plaintiffs all voluntarily terminated their employment for reasons other than the harassment, neither resignation nor additional reasons necessarily preclude an action for constructive discharge. In fact, "constructive" discharge presumes a voluntary resignation. *See Id*. at 429. And Weatherford provides no authority that the harassment Plaintiffs experienced has to be the sole reason for their resignation. *See generally, Project Aid*, 240 NLRB 743, 750 (1979) (evaluating a constructive discharge claim and referencing the "dominant reason" for resignation). The severity of the harassment and the reasons for, and reasonableness of, Plaintiffs' refusal to continue working at Weatherford are disputed issues of material fact for the jury.

### 5. Conclusion

Conduct is not actionable solely because it is "tinged with offensive sexual connotations." *Oncale* 523 U.S. at 80. And Title VII is not to be used as a "civility code" for the workplace. *Id*. at 81-82. But extreme and outrageous conduct that demeans a worker on a gender basis, including gender stereotyping, fully supports the use of Title VII to redress discrimination. The evidence of abuse occurring in the Weatherford

workplace on a regular basis with constant threats of same is sufficient to trigger Title VII remedies and issues for a jury. Thus the Court DENIES IN PART the motion for summary judgment on the Title VII claims for discrimination based on sex, including theories of sexual harassment, hostile work environment, and constructive discharge because there are disputed issues of material fact. The Court further DENIES IN PART the motion on the issue of the *Ellerth/Faragher* affirmative defense because it, also, involves disputed issues of material fact for the jury.

**D. Assault**

The summary judgment motion is brought only on behalf of Weatherford. And Weatherford does not dispute that Estrada engaged in offensive conduct, including "nubbing" Plaintiffs and threatening to "nub" Plaintiffs. There is no question that Estrada's conduct can be found to be assault (and battery),[3] defined as when a person (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when that person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Pen. Code § 22.01(a). Thus the question before the Court is whether Weatherford is subject to liability for Estrada's intentional, assaultive conduct.

Weatherford challenges Plaintiffs' assault claim solely on the basis of "course and scope." An employer may be liable for an employee's intentional tort when the tortious act is within the course and scope of the employee's general authority in furtherance of

---

[3] The definition of "assault" in the Texas Penal Code includes conduct previously denominated "battery."

the employer's business and for the accomplishment of the object for which the employee was hired. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). "If the purpose of serving the master's business actuates the servant to any appreciable extent his acts are within the scope of his employment." *Howard v. Am. Paper Stock Co.*, 523 S.W.2d 744, 747 (Tex. Civ. App.—Fort Worth 1975), *reformed and aff'd*, 528 S.W.2d 576 (Tex. 1975) (per curiam).

There is some evidence that, when Estrada made his threats against Plaintiffs, he did so in order to get them to work—as a motivational tool to accomplish something that he needed them to do on the jobsite. *See, Bodin v. Vagshenian*, 462 F.3d 481, 484-85 (5th Cir. 2006). While that summary judgment evidence is not particularly strong, "course and scope" is not the only means for holding Weatherford liable for Estrada's assault.

Plaintiffs' pleading is broad enough to support the theory of employer ratification as well:

- "While Plaintiffs were employed with Weatherford, they were each subjected to disgusting, perverse and outrageous conduct by several Weatherford supervisors and other employees." D.E. 27, p. 3.

- "Despite Weatherford's knowledge of these working conditions, it took no action to protect Plaintiffs, and allowed Estrada to openly continue his repeated assaults, intimidation, and threats on Plaintiffs and others." Id. at 4.

A principal can be held vicariously liable for the acts of its agent, even if outside the scope of his authority, if the principal adopts or confirms those acts. *See generally, Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d 435, 440 (Tex. App.—Texarkana 1998, no pet.); *Hays v. Marble*, 213 S.W.2d 329, 333 (Tex. App.—Amarillo 1948, writ dism'd) (citing *City of Laredo v. MacDonnell*, 52 Tex. 511, 529 (1880)).  Weatherford does not address this theory.

After review of the record evidence, the Court concludes that Plaintiffs have pled and raised a disputed issue of material fact whether Estrada's conduct constituting alleged assault was perpetrated for the purpose of directing his crew or was ratified by Weatherford through its supervisors who had knowledge and failed to stop the conduct. Therefore, the Court DENIES IN PART the motion for summary judgment with respect to Weatherford's argument that it is not liable for Estrada's assaults as a matter of law.

### E. Intentional Infliction of Emotional Distress

Plaintiffs' allegations also state predicate conduct for intentional infliction of emotional distress (IIED): intentional or reckless conduct that is extreme and outrageous, capable of causing severe emotional distress. *See generally, Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). However, as Weatherford has pointed out, a plaintiff is not entitled to bring an IIED claim if an alternative cause of action would provide a remedy for the severe emotional distress caused by the defendant's conduct. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Because the Court has held that Plaintiffs have other viable causes of action for the injury caused by Estrada's extreme and outrageous conduct, the Court GRANTS IN PART the motion for summary

judgment and DISMISSES the Plaintiffs' claims for intentional infliction of emotional distress.

### F. Negligent Hiring, Supervision, Training, and Retention of Estrada

Plaintiffs have asserted negligence claims against Weatherford for hiring, failure to supervise, failure to train, and retention of, Estrada. The success of these theories does not depend upon finding that Estrada's conduct was gender-based or discriminatory. They depend upon finding that Estrada's conduct was tortious and that Weatherford was negligent in giving him power to act. Weatherford seeks to defeat this claim by application of the Texas Workers Compensation Act's exclusive remedy bar of negligence claims against a subscribing employer. Tex. Labor Code § 408.001(a). Its motion includes evidence that Weatherford is a workers compensation subscriber. E.g., D.E. 57-1.

The courts in *GTE Southwest, Inc. v. Bruce*, 956 S.W.2d 636, 638 (Tex. App. 1997), *aff'd*, 998 S.W.2d 605 (Tex. 1999), explained that the workers' compensation bar does not apply to claims based upon a supervisor's intentional acts. However, the liability must be direct, such as that based on assault and discussed above—liability through "course and scope" or ratification.[4] *Bruce*, 998 S.W.2d at 618. Plaintiffs have not demonstrated that the claims for negligence regarding the decision to employ Estrada, for instance, were intentional acts of Weatherford in order to be included as an exception to the statute. Thus the exclusive remedy bar applies to the negligent hiring, supervision, training, and retention claims.

---

[4] For that reason, Plaintiffs' assault claim is not included in the workers compensation bar.

17 / 19

Plaintiffs oppose the application of the workers compensation bar because it is an affirmative defense that Weatherford failed to plead. They suggest that they should be given time to conduct discovery on this issue before the Court applies the bar. Plaintiffs do not articulate what discovery they believe needs to be conducted. Neither do Plaintiffs demonstrate any prejudicial surprise. The only issue is whether Weatherford is a workers compensation subscriber and evidence to that effect has been submitted. Under such circumstances, the failure to plead the defense does not preclude its application. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (technical failure to comply with Rule 8(c) is not fatal in the absence of evidence of surprise or prejudice or if the defense is raised at a "pragmatically sufficient time").

For these reasons, the Court GRANTS IN PART the motion for summary judgment and DISMISSES Plaintiffs' claims for negligent hiring, supervision, training, and retention. The Court does not reach Weatherford's alternative argument that Plaintiffs have failed to supply evidence on the merits of those claims.

## CONCLUSION

For the reasons set out above, the Court GRANTS IN PART and DENIES IN PART Weatherford's Motion for Summary Judgment (D.E. 57). The Court DISMISSES Plaintiffs' claims against Weatherford for Title VII retaliation, intentional infliction of emotional distress, and negligent hiring, supervision, training, and retention. Plaintiffs' claims against Weatherford for Title VII discrimination based on sex, sexual harassment, hostile work environment, and constructive discharge, along with assault (and battery)

are ORDERED to proceed to trial. Plaintiffs' claims against Estrada are unaffected by this Order.

ORDERED this 27th day of July, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE